**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: LINDA L. GARMONG,<br><br>Debtor, | |
| GREGORY O. GARMONG,<br><br>      Appellant,<br><br>vs.<br><br>MAUPIN, COX & LEGOY, a Nevada Professional corporation,<br><br>      Appellee. | Case No. 3:19-CV-00490-RCJ<br><br>BK-10-52588-GWZ CHAPTER 7<br><br>ADVERSARY NO: 17-05043-GWZ<br><br>**ORDER** |

   This matter comes before the Court on appeal from the United States Bankruptcy Court for the District of Nevada. Appellant appeals two orders issued by the bankruptcy court: the Order on Motion to Remand, Motion to Abstain and Motion for Attorneys [sic] Fees and Costs, (EOR 075–78) (hereinafter referred to as the "Remand Order"), and the Order on Motion to Enforce Order Approving Withdrawal of Counsel and Settlement Terms Placed Upon the Record and Motion for Damages, (EOR 141–44) (hereinafter referred to as the "Enforcement Order"). This Court has jurisdiction to review the bankruptcy court's orders under 28 U.S.C. § 158(a).

**FACTUAL BACKGROUND**

This appeal arises from events occurring in an adversary proceeding initiated by Appellant, Mr. Garmong, in regard to his ex-wife's Chapter 7 bankruptcy case, (Case No. 10-52588-GWZ). Appellee, Maupin, Cox & Legoy, and its then-employee Christopher D. Jaime represented Appellant in this proceeding. In November 2014, Appellant filed a Motion to Withdraw as Attorney of Record, citing both an irreparable deterioration of the attorney-client relationship and the fact that Mr. Jaime had been appointed to a federal bankruptcy judgeship in California.[1] Appellee then filed a Motion for Order Shortening Time for Hearing on Motion to Withdraw as Counsel. The bankruptcy court granted this motion over the objection of Appellee. Appellant then filed a motion for reconsideration, which the court denied.

On the morning before the hearing, Appellant initiated contact with Appellee to discuss settlement terms. Upon arriving in the courtroom, the parties indicated to the bankruptcy judge that they reached an agreement as to the terms of withdrawal. The essence of the agreement was a global release of all claims Appellant had accrued against Appellee, up to that date, in exchange for a waiver of any outstanding legal fees owed to Appellee. The parties explained these terms to the court on the record, and Appellant agreed to them. However, when Appellee sent a written copy of the agreement to Appellant, he refused to sign it on advice of newly-retained counsel. Nevertheless, the bankruptcy court determined that Appellant had orally agreed to the binding terms of the settlement agreement and issued an order granting withdrawal of counsel and incorporating the terms of the agreement into the order.

In November 2017, Appellant filed suit against Appellee in the Second Judicial District Court of the State of Nevada, bringing various state-law claims. Appellee then removed the case to the bankruptcy court under 28 U.S.C. § 1452, asking the bankruptcy court to enforce the

---

[1] Now-Judge Jaime is not a named party in the instant case.

settlement agreement. Upon removal, Appellant filed a motion to remand based on lack of subject-matter jurisdiction, statutory requirement of mandatory abstention, and propriety of discretionary abstention. The bankruptcy court denied the motion but explicitly found that its jurisdiction reached only to the matter of interpreting and enforcing the settlement agreement, not to the underlying merits of the state-law claims. (EOR 076–77.) In a subsequent order, the bankruptcy court found that the settlement agreement was valid and that the state-law claims were barred by the settlement agreement. Consequently, it dismissed the case with prejudice, noting that enforcement of the order left "nothing to remand to the state court." (EOR 142.) Appellant brought this appeal, objecting to both orders.

## LEGAL STANDARD

### I. *Standard of Review*

In reviewing the bankruptcy court's order denying remand, this Court reviews findings of fact under the clearly erroneous standard and legal conclusions de novo. *In re Daniels-Head & Assocs.*, 819 F.2d 914, 918 (9th Cir. 1987). Review pursuant to the clearly erroneous standard is highly deferential and "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Consequently, a reviewing court will find the clearly erroneous standard to be met only when—despite evidence to support the finding—review of "the entire evidence" leaves a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

### II. *Enforcement of the Settlement Agreement*

A lower court's enforcement of a settlement agreement is reviewed for abuse of discretion. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136 (9th Cir. 2002) (citing *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)). "An abuse of discretion is a plain error, discretion exercised to an end not

justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 977 (9th Cir. 2003) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). That is, "[t]he district court abuses its discretion when its equitable decision is based on an error of law or a clearly erroneous factual finding." *Rabkin*, 350 F.3d at 977 (quoting *United States v. Washington*, 157 F.3d 630, 642 (9th Cir. 1998)).

## ANALYSIS

Appellant provides three arguments for why the bankruptcy court's orders denying remand and dismissing the case are improper: (1) the bankruptcy court did not have subject-matter jurisdiction over the removed adversary proceeding; (2) even if the bankruptcy court did have subject-matter jurisdiction, there was a mandatory requirement to abstain from hearing the case; and (3) even if there was no mandatory abstention requirement, the bankruptcy court abused its discretion in denying the motion to remand.

### I.     *Subject-Matter Jurisdiction*

Appellee removed this action under 28 U.S.C. § 1452, which allows removal of any case for which 28 U.S.C. § 1334 provides jurisdiction. Section 1334 provides a district court subject-matter jurisdiction for three categories of civil proceedings: those "arising under title 11"; those "arising in . . . a case under title 11"; and those "related to a case under title 11."[2] "Proceedings 'arising under' title 11 involve causes of action created or determined by a statutory provision of that title." *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013) (citing *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 737 (9th Cir. 2000)). "Similarly, proceedings 'arising in' title 11 are not those created or determined by the bankruptcy code, but which would have no existence outside

///

---

[2] This jurisdiction is extended to the bankruptcy courts by 28 U.S.C. § 157(a)–(b).

of a bankruptcy case." *Id.* (citing *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435–37 (9th Cir. 1995)).

Appellant's argument that the bankruptcy court lacked jurisdiction is without merit because "an exercise of jurisdiction by a [bankruptcy] court to enforce its own orders 'arises in' or is 'related to' the bankruptcy case and is thus within court's § 1334(b) statutory jurisdiction." *Source of Jurisdiction*, 1 Norton Bankr. L. & Prac. 3d § 4:30; *see In re Sterling Optical Corp.*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003) ("Matters involving the enforcement or construction of a bankruptcy court order are in this category [of 'arising in' jurisdiction]."); *In re Bavelis*, 453 B.R. 832, 853 (Bankr. S.D. Ohio 2011) ("An example of a proceeding arising in a bankruptcy case is a motion requesting that a bankruptcy court interpret or enforce its own order."). "It is well recognized that a bankruptcy court has the power to interpret and enforce its own orders." *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013) (citing *Travelers Indemnity Company v. Bailey*, 557 U.S. 137, 151 (2009)). Numerous bankruptcy courts have correctly concluded that removal is proper to enforce its order. *See, e.g.*, *In re Brownsville Prop. Corp., Inc.*, 469 B.R. 216, 223 (Bankr. W.D. Pa. 2012); *In re GTI Capital Holdings, LLC*, 420 B.R. 1, 8 (Bankr. D. Ariz. 2009). The bankruptcy court therefore correctly concluded that it had jurisdiction and that removal was proper.

## II.     *The Bankruptcy Court Properly Enforced the Settlement Agreement*

Appellant's first argument is that the incorporated settlement agreement is void because the bankruptcy court violated Appellant's constitutional due process right to counsel when it denied his motions and held the hearing on withdrawal on an expedited timeframe. However, while denial of a continuance requested for the purpose of obtaining counsel at one's own expense or to afford recently-acquired counsel the opportunity to learn the facts of the case may be a Fifth Amendment violation, it is not a *per se* violation. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

1  Rather, "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary
2  as to violate due process. The answer must be found in the circumstances presented to the trial
3  judge at the time the request is denied." *Id.* (citing *Nilva v. United States*, 352 U.S. 385, 395
4  (1957)).

5    Here, the decision by the bankruptcy judge to grant the motion to expedite and deny the
6  motion to reconsider was in no way arbitrary. Although the bankruptcy judge did not present his
7  reasoning on the merits in either of the two issued written orders, he did state his reasoning, in
8  great detail, during the hearing on the withdrawal order. (SA 241–54.) Contributing to his decision
9  to deny the requested continuance were the following facts: (1) the issue—withdrawal of
10 counsel—was not complex; (2) Appellant is a retired attorney who practiced for close to forty
11 years; (3) the filings by both parties indicated that the attorney-client relationship had deteriorated
12 to the point of being "irrevocably destroyed"; (4) there were no pending contested motions or
13 events in the primary bankruptcy case; (5) Appellant and Appellee had been negotiating the
14 withdrawal of counsel for two months prior to the hearing; and (6) Appellant had made numerous
15 and substantial filings to the court on the matter of the withdrawal. *Id.* This reasoning amply allays
16 any concerns that Appellant was prejudiced by the expedited withdrawal hearing or that the matter
17 was decided arbitrarily.

18   Furthermore, even if this Court found that denial of a continuance was a violation of
19 Appellant's Fifth Amendment rights, Appellant waived that argument both by his conduct at the
20 withdrawal hearing and by failing to challenge the withdrawal order after it was issued.[3] During
21 the course of the hearing, the bankruptcy judge repeatedly and thoroughly canvassed Appellant as

---

[3] Appellant argues that he did not challenge the order "because no client would want to be represented by attorneys who abandoned him and then demanded $20,000 to continue the case with inexperienced counsel. And in any event, the 'settlement agreement' ostensibly set forth in the Withdrawal Order was void." (ECF No. 9 at 15:21–24.) However, those are precisely the arguments that should have been made on appeal, not reasons to skip such an appeal.

to his understanding of the proposed settlement agreement and his willingness to agree to the terms. This canvassing, along with Appellant's legal experience, constituted proper waiver. *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Thus, the Court rejects Appellant's first argument.

Appellant's second argument is equally unavailing. Appellant argues that a material term of the settlement agreement was that it be reduced to writing and signed by both parties after Appellant was able to have the agreement reviewed by counsel. It is not in dispute that, following the withdrawal hearing, Appellee sent a proposed agreement to Appellant. But Appellant refused to sign the agreement, and his new counsel sent a letter to Appellee objecting to the terms. (EOR 001–03.) Nonetheless, the bankruptcy court found that Appellant had agreed to the terms on the record and therefore issued an order approving both withdrawal and the terms of the settlement agreement. (EOR 004–07.)

Appellant's main contractual argument—as opposed to the constitutional arguments discussed above—is that the clear terms of the agreement necessitated a signed writing and, in the absence of such a writing, there was no valid settlement agreement. In support, Appellant cites to *Dolge v. Masek*, 268 P.2d 919 (Nev. 1954), in which the Nevada Supreme Court held that oral agreement was not binding in light of the complexity and length of the underlying agreement, in addition to the presence of clauses in the agreement explicitly contemplating review and signing of a written agreement by the parties. However, not only is this Court bound by *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002), the facts in the instant case are nearly identical to *Doi*.

At the withdrawal hearing, the terms were stated on the record as follows: Appellee "has agreed to waive any [and] all outstanding attorney's fees and costs. There's approximately $10,500 due and owing at this time." (SA 254–56.) Mr. Jaime "has agreed to devote a period of time, he's

indicated up to five days . . . to bring counsel of Mr. Garmong's choice up to speed with respect to the adversary proceeding that remains." (*Id.*) Appellee has "agreed to deliver to Mr. Garmong any and all files that [it] ha[s] of his." (*Id.*) In exchange, the parties have agreed to execute "a mutual settlement agreement and release of all claims from the beginning of time up to the date of execution of the agreement, with the understanding that the Court would retain jurisdiction over that agreement." (*Id.*) Lastly, the agreement was "subject to Mr. Garmong's having an opportunity for counsel to review the settlement agreement." (*Id.*)

Appellant points to the final term as evidence that the parties mutually intended the agreement not be legally binding until reduced to written form and signed. However, following the stating of the terms, the bankruptcy court engaged in the following colloquy with Appellant:

> The Court: Mr. Garmong, you've heard both Mr. Anderson and Mr. Jaime. Is this an agreement that you have arrived at with the law firm and Mr. Jaime?
>
> Mr. Garmong: Yes, sir. Excuse me. Yes, sir.
>
> The Court: And you understand it?
>
> Mr. Garmong: I hope so.
>
> [Court discusses Appellant's legal career and experience.]
>
> The Court: All right. Do you understand the terms that were just placed on the record?
>
> Mr. Garmong, Yes, I do. My only—
>
> . . . . .
>
> The Court: And you agree to be bound by them?
>
> Mr. Garmong: Yes, sir.
>
> The Court: Now, what did you want to tell me?

///

///

>Mr. Garmong, I was just going to say the only reason I say I think I understand it is that I don't have much—personally have much familiarity with settlement agreements. I'm in agreement with the terms as they've been stated. I—
>
>The Court: There's no magic to the language.
>
>Mr. Garmong: I understand that, and that's what I'm saying is all I—my only qualifier is I'd like to see it in writing and have counsel review it. But I'm not here to quibble, Your Honor. I'm very much in favor of this. I want to see Mr. Jaime go on to his new career, and I'm so happy to have this behind us.

(SA 256–57).

In *Doi*, as in the instant case, the alleged breaching party "argue[d] that, her affirmative response to the question of whether she agreed to the terms as stated notwithstanding, she did not actually intend to be bound until there was a writing. She points to her having said 'After I see the documents' in her colloquy with the court." 276 F.3d at 1137. The Ninth Circuit found "no merit in this argument." *Id.* The specific colloquy in *Doi* was as follows:

>Court: Can I have you also, Ms. Doi, state that you do agree to these terms?
>
>Doi: After I see the documents I—
>
>. . . . .
>
>Court: The terms, as stated right now, do you agree to those?
>
>Doi: I stated.
>
>Court: You do agree?
>
>Doi: Yeah.

*Id.* That oral agreement was found to be binding despite the fact that the terms as stated on the record included a provision that "Doi would stipulate to dismiss the case with prejudice, *as well as execute a release and indemnity agreement*." *Id.* at 1138 (emphasis added). Here, the same is

true: despite mention of a written and signed document, both parties clearly "manifest[ed] . . . agreement . . . to [be] held to constitute binding contractual assent, [with] the evidence that the parties had intended presently to be bound . . . be[ing] convincing and subject to no other reasonable interpretation." *Dolge*, 268 P.2d at 921. Appellant's statement that "I'd like to see it in writing and have counsel review it," is more than offset by his statement, "I'm not here to quibble . . . . I'm very much in favor of this," and his other affirmations to the bankruptcy court.

Accordingly, this Court affirms the bankruptcy court's finding that the execution of a written and signed settlement document was not a material term of the agreement which would render the agreement void in its absence. Having found the settlement agreement valid and jurisdiction over the agreement properly retained by the bankruptcy court, this Court now proceeds to the question of whether mandatory abstention was required.

### III.     *Mandatory Abstention*

Appellant argues that the requirements for mandatory abstention by the bankruptcy court were met, and therefore the bankruptcy court was in error in not remanding the removed adversary proceeding to state court. 28 U.S.C. § 1334(c)(2) provides the requirements for mandatory abstention, which have been distilled into seven elements:

> (1) A timely motion; (2) a purely state law question; (3) a non-core proceeding [under] § 157(c)(1); (4) a lack of independent federal jurisdiction absent the petition under Title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated; (7) a state forum of appropriate jurisdiction exists.

*In re Gen. Carriers Corp.*, 258 B.R. 181, 189 (9th Cir. B.A.P. 2001) (quoting *In re World Solar Corp.*, 81 B.R. 603, 606 (Bankr. S.D. Cal. 1988)). The fatal flaw in Appellant's argument is that element four is not satisfied. As discussed in detail above, the bankruptcy court has jurisdiction to enforce the settlement agreement which it had retained jurisdiction over. Therefore, the bankruptcy

court was not required to abstain from taking the case, and this Court accordingly affirms the bankruptcy court's findings that mandatory abstention was not applicable.

### IV. *Abuse of Discretion*

Appellant's final argument is that the bankruptcy court abused its discretion. It is not clear from Appellant's filings whether he is discussing discretionary abstention under 28 U.S.C. § 1334(c)(1) or some other abuse of discretion (such as in issuing the order to enforce the terms of the settlement agreement). As Appellant has not developed this argument, the Court declines to address it.

## CONCLUSION

IT IS HEREBY ORDERED that the bankruptcy court's Order on Motion to Remand, Motion to Abstain and Motion for Attorneys Fees and Costs is AFFIRMED.

IT IS FURTHER ORDERED that the bankruptcy court's Order on Motion to Enforce Order Approving Withdrawal of Counsel and Settlement Terms Placed Upon the Record and Motion for Damages is AFFIRMED.

IT IS SO ORDERED.

Dated July 14, 2020.

_____
ROBERT C. JONES
United States District Judge